# EXHIBIT

# B

UNREPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1871

September Term, 2010

---

CHANDRA ANAND

v.

DEUTSCHE BANK
NATIONAL TRUST COMPANY, ETC.,
ET AL.

---

Eyler, Deborah S.,
Woodward,
Kehoe,

JJ.

---

Opinion by Eyler, Deborah S., J.

---

Filed: April 3, 2012

Chandra Anand, the appellant, brings this interlocutory appeal from an order of the Circuit Court for Montgomery County denying him a temporary restraining order ("TRO") and preliminary injunction to stay foreclosure proceedings. The appellees are Deutsche Bank National Trust Company ("Deutsche Bank"); Saxon Mortgage Services, Inc. ("SMS"); Saxon Home Mortgage ("Saxon"); and John Burson, William Savage, Gregory Britto, Jason Murphy, Kristine Brown and Erik Yoder (collectively the "Substitute Trustees").

Anand presents two multi-part questions for review, which we have combined and rephrased as: Did the circuit court abuse its discretion in denying the TRO and/or motion for preliminary injunction? For the reasons to follow, we shall affirm the order of the circuit court.

## FACTS AND PROCEEDINGS

Anand and his wife, Renu Anand, are the owners of a home located at 19909 Knollcross Drive in Germantown ("the Property"), titled as tenants by the entireties.[1] In January of 2007, the Anands decided to refinance their mortgage on the Property, then held by SMS. On January 23, 2007, the Anands obtained a first mortgage loan in the amount of $500,000 ("First Mortgage"), a second mortgage loan in the amount of $182,100, and $47,000 in cash. Saxon was the lender on both refinance loans. The First Mortgage was secured by a Deed of Trust ("DOT") in favor of Saxon, which was recorded in the Land Records of Montgomery County ("Land Records") on February 12, 2007.

---

[1]Despite her interest in the Property, the appellant's wife is not a party to this case.

Saxon thereafter transferred the First Mortgage to Deutsche Bank, as Trustee for Saxon Asset Securities Trust 2007-2 ("Saxon Trust"). At that time, SMS was the loan servicer for the First Mortgage.[2]

In August of 2008, the Anands defaulted on the First Mortgage.

On November 21, 2008, SMS, acting as attorney-in-fact for Deutsche Bank, executed a Deed of Appointment of Substitute Trustees ("Deed of Appointment") appointing the Substitute Trustees. The Deed of Appointment bears the notarized signature of Liquenda Allotey, an assistant vice president for SMS. The Deed of Appointment was recorded in the Land Records on December 3, 2008.

On December 30, 2008, Anand filed suit in the circuit court against Deutsche Bank, SMS, and the Substitute Trustees ("first action") asserting, *inter alia*, causes of action for negligence, federal truth in lending violations, and mortgage fraud.[3] Anand's wife later joined the action.

On January 20, 2009, one of the Substitute Trustees initiated a foreclosure action by filing an Order to Docket Suit in the circuit court.

The Anands moved to consolidate the two cases, moved within the first action to enjoin the foreclosure, and filed multiple unsuccessful motions to stay within the foreclosure case. Ultimately, by order dated April 22, 2010, the court in the first action granted the

---

[2]The First Mortgage now is serviced by Ocwen Loan Servicing, Inc.

[3]Anand initially represented himself in the first action, but later retained counsel.

defendants' motion to dismiss the Anands' fourth amended complaint, with prejudice. The Property was scheduled to be sold at auction on June 16, 2010.

Six days prior to the sale, on June 10, 2010, Anand filed the instant action, asserting claims of negligence against Saxon and mortgage fraud against all of the appellees, and seeking declaratory relief and a preliminary and permanent injunction. With respect to Saxon, Anand alleged that it negligently failed to verify his income and ability to repay the First Mortgage and that it fraudulently attributed income to him on the loan application despite his having informed a loan officer for Saxon that he was unemployed at the time of the refinance transaction. With respect to Deutsche Bank, SMS, and the Substitute Trustees, Anand alleged that they fraudulently caused the Deed of Substitution to be executed without any properly recorded document authorizing Allotey to act for Deutsche Bank or SMS; that SMS had failed to afford Anand loan modification assistance required by federal law; that the defendants should be estopped to foreclose against the Property under the doctrine of unclean hands; and that an incorrect description of the Property in the DOT precluded the foreclosure action. Anand sought compensatory damages; a declaration that SMS "is not authorized under the terms of the [DOT] to name a substitute trustee" and that the Deed of Appointment, the steps taken to institute the foreclosure sale, and any resulting sale "be declared a nullity"; and an injunction prohibiting SMS and Deutsche Bank from selling the Property and restoring Anand's "rights under and pursuant to the promissory note [on the

First Mortgage] . . . *nunc pro tunc,* to a time that predates the date of execution of the [Deed of Appointment]."

Two days before the sale, on June 14, 2010, Anand filed an "Ex Parte Motion for [TRO]" to restrain the sale of the Property. In his TRO motion, Anand repeated his assertion that the Deed of Substitution was a legal nullity because it was executed without proper authority. He argued that the Substitute Trustees lacked the authority to initiate the foreclosure action. In support of these allegations, Anand attached the Deed of Appointment, the notice of the foreclosure sale, and a limited power of attorney ("LPOA") executed in March of 2009 by Deutsche Bank authorizing SMS to act as its attorney-in-fact in certain transactions relating to properties in the Saxon Trust. His attorney also submitted an affidavit averring that "[t]hrough to the date of [the] Affidavit, [he had] been able to assemble [certain] attached documentation" identifying Allotey alternatively as an employee of Foreclosure Solutions, Inc. , a vice president of Mortgage Electronic Registration Systems, Inc., and an authorized signatory for HSBC Mortgage Lending, Inc.

By order dated June 15, 2010 and entered on June 16, 2010, the circuit court denied the TRO, treated the motion as one for preliminary injunction, and directed that the case be set in for a motions hearing. The court further ordered that the foreclosure case "accompany

this matter for full hearing." As a result, the foreclosure sale did not go forward as scheduled.[4]

On July 16, 2010, the appellees opposed the motion for preliminary injunction, asserting that Anand's motion sought a stay of the foreclosure proceedings, which properly is governed by Rule 14-211, and that he had failed to comply with the provisions of that Rule.[5] The appellees further argued that Anand was unlikely to prevail on the merits of his complaint because all of his claims had been raised in the first action (which, as mentioned, had been dismissed with prejudice) and/or in unsuccessful motions to stay filed within the

---

[4]The Property has yet to be sold at auction. The most recent docket entry in the related foreclosure case is a suggestion of bankruptcy as to Anand's wife. A prior suggestion of bankruptcy relative to Anand and his wife had been released in August of 2010.

[5]Rule 14-211 took effect on May 1, 2009. Its predecessor, Rule 14-209, in effect at such time as the related foreclosure case was initiated, provided in pertinent part:

> (b) **Injunction to Stay Foreclosure.** (1) Motion. The debtor, any party to the lien instrument, or any person who claims under the debtor a right to or interest in the property that is subordinate to the lien being foreclosed, may file a motion for an injunction to stay any sale or any proceedings after a sale under these rules. The motion shall not be granted unless the motion is supported by affidavit as to all facts asserted and contains: (1) a statement as to whether the moving party admits any amount of the debt to be due and payable as of the date the motion is filed, (2) if an amount is admitted, a statement that the moving party has paid the amount into court with the filing of the motion, and (3) a detailed statement of facts, showing that: (A) the debt and all interest due thereon have been fully paid, or (B) there is no default, or (C) fraud was used by the secured party, or with the secured party's knowledge, in obtaining the lien.

foreclosure case and thus, were barred under principles of *res judicata*;[6] that the negligence count and the count asserting mortgage fraud against Saxon were barred by the applicable statute of limitations; and that the complaint failed to state a proper claim for mortgage fraud against the other appellees. Finally, the appellees maintained that the balance of convenience, irreparable harm, and public interest factors all weighed in their favor as the foreclosure action had been pending for 18 months and the Anands were more than 23 months in arrears on the First Mortgage. The appellees attached to their opposition a copy of the April 22, 2010 order dismissing the first action with prejudice, entered on June 11, 2010.

The motions hearing was held on August 19, 2010. That day, the appellees supplemented their opposition with evidence that Allotey, who, as discussed, executed the Deed of Appointment, was authorized to act on behalf of SMS, the servicer of the First Mortgage at the time of the substitution. This evidence included an "Incumbency Certificate" executed in September of 2008 by an SMS vice president whereby SMS appointed Allotey and others as assistant vice presidents of SMS with the authority to "prepare, execute and deliver such document [sic] as are necessary to facilitate the foreclosure of mortgage loans . . . by any entities for which [SMS] services mortgage loans

[6]As mentioned, the Anands amended their complaint four times in the first action, twice in order to avoid dismissal. At a hearing on the defendants' fourth motion to dismiss, the Anands, through counsel, announced their intention to file a fifth amended complaint. The court denied leave to amend, however, and granted the defendants' motion to dismiss with prejudice.

as agent and attorney-in-fact." This authority included the preparation and execution of "substitutions of trustee."

During argument on the motion, Anand's counsel conceded that the claims against Saxon for negligence and mortgage fraud were barred by the dismissal with prejudice of the first action. He claimed, however, that "new facts" that had come to light more recently called into question the validity of the Deed of Assignment and the remaining claims should go forward. The court questioned Anand's counsel as to how, assuming the truth of all of the allegations of the complaint and the motion for preliminary injunction, any defect in the Deed of Assignment inured "to the detriment" of Anand. Anand's counsel replied: "Does not."

The court denied the motion for preliminary injunction. After setting forth the four factors relevant to the issuance of a preliminary injunction, the court opined as follows:

> I have considered the matters counsel has raised, and to the extent that the allegations of fraud, fraudulent procurement in propriety in the underlying making of the mortgage were before Judge Burrell [in the first action], that matter has been dismissed. My reading of the record so far indicates it was dismissed without leave to amend. She said you may not file a fifth amended complaint. The time to appeal has run. That's final. So, to that extent, all of those matters which were or could have been litigated in that case are barred by the doctrine of res []judicata, that is to say, claim preclusion in the words of the Restatement (Second) of Judgments.
>
> I have considered the matters which counsel says are new matters, but, respectfully, I do not see how any of those would prevent an auction sale of the

property. I have considered, as well, Judge Cathal [sic], I believe, landmark opinion in the *Greenbrier* [sic] case.[7]

Although there is some development in that area, which I don't need to comment on further at this time, there have been a couple of cases out of the Court of Special Appeals, the *Hunter* case, 190 Md. App. 250,[8] and others which, arguably, have caused re-thinking of that, but that's really not before me today. *Hunter* was a hearing on exceptions to the ratification of the sale. What I have before me is your classic injunction to stop the sale.

I find [Anand] has not carried [his] burden of proof, production, or persuasion on any of the four factors. I find that it is not necessary to grant a preliminary injunction at this time.

I have considered what counsel has told me as a proffer, but what I need to base – preliminary injunctions are facts. I have before me no facts sufficient, in my judgment, if they were credited by the fact-finder, which is me in this case, which would cause me to issue an extraordinary equitable remedy of a preliminary injunction.

So, the motion for a preliminary injunction is denied. This, of course, does not mean that the homeowners cannot except to the sale, in the event there is a sale, and raise all those matters which they think are still alive or appropriate under the *Hunter* case, 190 Md. App. at 250.

An order denying the motion was entered the following day.

Anand noted a timely interlocutory appeal from that order.

## DISCUSSION

---

[7]In *Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks*, 387 Md. 683 (2005), the Court of Appeals held that exceptions filed after a foreclosure sale may assert defects in the sale, but may not raise pre-sale objections which properly could have been raised in a motion to enjoin the sale.

[8]In *Bierman v. Hunter*, 190 Md. App. 250 (2010), this Court held that a homeowner could raise an allegation of fraud in the procurement rendering the underlying mortgage invalid in post-sale exceptions. In *Bates v. Cohn*, 417 Md. 309, 32s-24 & n.10 (2010), the Court of Appeals reaffirmed its prior holding in *Greenbriar*, but declined to specifically address the holding in *Bierman* with regard to fraud in the procurement.

The Court of Appeals has explained the scope of our review of the propriety of the grant or denial of a preliminary injunction as follows:

> "Our review of a preliminary injunction is limited because we do not now finally determine the merits of the parties' arguments." *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 300, 849 A.2d 451, 458 (2004) (citing *Department of Transportation v. Armacost*, 299 Md. 392, 404, 474 A.2d 191, 197 (1984)) (Internal quotations omitted). We review only whether the trial court properly granted [or denied] the preliminary injunction. *Fogle v. H & G Restaurant*, 337 Md. 441, 456, 654 A.2d 449, 455 (1995); *see also State Dep't v. Baltimore County*, 281 Md. 548, 550, 383 A.2d 51, 53 (1977) (stating that "it is a rare instance in which a trial court's discretionary decision to grant or to deny a preliminary injunction will be disturbed by this Court"). In reviewing a trial court's decision to issue [or deny] a preliminary injunction, we "determine whether the trial judge exercised sound discretion in examining the four factors that must be found. . . ." *LeJeune*, 381 Md. at 300, 849 A.2d at 458 (citing *Lerner v. Lerner*, 306 Md. 771, 776, 511 A.2d 501, 504 (1986)).

*Ehrlich v. Perez*, 394 Md. 691, 707 (2006).

The four factors governing the propriety of the grant of a preliminary injunction are:

> "(1) the likelihood that the plaintiff will succeed on the merits; (2) the 'balance of convenience' determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal; (3) whether the plaintiff will suffer irreparable injury unless the injunction is granted; and (4) the public interest."

*Eastside Vend Distribs., Inc. v. Pepsi Bottling Group, Inc.*, 396 Md. 219, 240 (2006) (quoting *Armacost, supra*, 299 Md. at 404-05, in turn quoting *State Dep't v. Baltimore Cnty*, 281 Md. at 554-57).

> [I]t is the complainant who has the burden of presenting a case justifying the granting of a preliminary injunction so that if the facts as stated in the bill of complaint or, when appropriate, as shown by the evidence, are not full and sufficiently definite and clear, in support of the right asserted, and that such right has been violated, the court will not order preliminary relief.

*State Dep't v. Baltimore Cnty*, *supra*, 281 Md. at 554-57 (internal citation and quotation omitted). The failure to satisfy any one of the factors justifies the denial of a preliminary injunction. *Fogle, supra*, 337 Md. at 456.

A court abuses its discretion when it fails to exercise it, or when it exercises it in a "'manifestly unreasonable'" manner or based upon "'untenable grounds, or for untenable reasons.'" *In re Don Mc.*, 344 Md. 194, 201 (1996) (quoting *State ex rel. Carroll v. Junker*, 79 Wash. 2d 12, 482 P.2d 775, 784 (Wash. 1971)). "[T]o be reversed [for abuse of discretion] the decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Wilson v. John Crane, Inc.*, 385 Md. 185, 199 (2005) (internal quotations omitted).

As discussed, the court concluded that Anand failed to meet his burden as to each of the four factors. Anand devotes the majority of his brief to his argument that he is likely to prevail on the merits of his claims because the Deed of Appointment was made without authority and/or that Deutsche Bank may not delegate its fiduciary duties as trustee. This argument rests on the premise that Deutsche Bank failed to properly authorize SMS to act as its attorney-in-fact and/or that SMS fraudulently or improperly authorized Allotey to act on its behalf. As already discussed, the appellees submitted evidence to the motion court rebutting the proposition that Allotey acted without authority.

The court was not persuaded by the evidence Anand produced that the Deed of Appointment was improper or that the Substitute Trustees lacked authority to initiate the foreclosure proceedings. Moreover, Anand failed to present any justification as to why his arguments as to the validity of the appointment of the Substitute Trustees could not have been raised within the first action or within a motion to stay the foreclosure sale within the foreclosure case. *See R & D 2001, LLC v. Rice*, 402 Md. 648, 663 (2008) (*res judicata* bars a claim that is "identical to that determined or that which could have been raised and determined in the prior litigation"). He also failed to demonstrate how any of the allegedly fraudulent conduct caused him harm. For all of these reasons, the court found that Anand had not met his burden of proof as to the first factor. We have no difficulty in concluding that the court did not abuse its discretion in so finding. We also perceive no abuse of discretion in the court's weighing of the balance of convenience, irreparable harm, and public interest factors in favor of the appellees. Accordingly, we shall affirm the order of the circuit court.[9]

**ORDER AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

---

[9]The appellee Deutsche Bank filed a motion to dismiss this appeal on the ground that the appellant did not submit a copy of the transcript of the April 19, 2010 hearing. That transcript is included in the appendix to the appellant's brief, however. Therefore, we shall deny the motion to dismiss.